## JOHN M. RISSMAN, Admr. *et al.*

### *v.*

## FREDERICK WIERTH *et al.*

### *Opinion filed February 21, 1906.*

1. WILLS—*when widow takes a fee simple under rule in Shelly's case.* Under the rule in *Shelly's case* a devise of the testator's property to his wife, "to hold and to have to her, my said wife, and to her heirs and assigns forever, but if she gets married again, then at the time of her second marriage one-half of said estate, real and personal, to be sold and divided, as follows," etc., passes a fee simple title to the widow, notwithstanding a subsequent clause attempts to limit her interest to a life estate.

2. SAME—*what not essential to application of rule in Shelly's case.* It is not essential to the application of the rule in *Shelly's case* that the will shall in express language create a freehold estate in the ancestor, since the application of the rule does not depend upon the quantity of the estate given to the ancestor but upon the estate devised to the heirs.

APPEAL from the Circuit Court of DeKalb county; the Hon. CHARLES A. BISHOP, Judge, presiding.

The appellants, Mary Rissman and John Michael Rissman, the latter as administrator *de bonis non* with the will annexed of the estate of John Michael Rupprecht, deceased, filed their bill for partition in the circuit court of DeKalb county, in which they alleged that on July 21, 1890, John Michael Rupprecht departed this life testate, leaving a last will and testament, the material parts of which are as follows:

"*First*—All my just debts and funeral expenses shall be fully paid.

"*Second*—I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my beloved wife, Sibila Barbara Rupprecht, to hold and to have to her, my said wife, and to her heirs and assigns forever, but if she gets married again, then at the time of her second

marriage one-half of said estate, real and personal, to be sold and divided as follows:    (Here follow bequests to various legatees, most of whom are appellees here.)

"*Third*—If anything remain of the estate, real and personal, after said division, it shall be divided equally among the above named persons.

"*Fourth*—If my beloved wife, Sibila Barbara Rupprecht, remain my widow, she is to have and to hold the whole estate, real and personal, for her own support until her death, and after her death the residue shall be divided among the above named persons in the proportion of what is named to the whole.

"*Fifth*—If any of the above named heirs should die before the division of said estate, then said heirs' proportion shall revert back to the estate and be divided as the whole estate."

John Michael Rupprecht left surviving him his widow, Sibila Barbara Rupprecht, and the devisees mentioned in the second paragraph of the said will, collaterals, his only heirs-at-law.    On February 24, 1904, the widow, Sibila Barbara Rupprecht, departed this life intestate, leaving Louis Richard, her nephew, her only heir-at-law, she never having married since the death of her husband, John Michael Rupprecht. The bill alleges that by the last will and testament of John Michael Rupprecht the devisees named in the second clause of the will became seized as tenants in common of the real estate therein described of which the testator died seized, and that upon the death of his said widow they became entitled to partition the same.

Appellee Louis Richard filed his answer denying that the legatees had any interest in the estate, but that under the will of John Michael Rupprecht, he, as the only heir-at-law of Sibila Barbara Rupprecht, upon her death became the owner in fee simple of the lands described in the bill.    He also filed a cross-bill, asking for a construction of the will and for an accounting.    To this answer and cross-bill the appellants

demurred, which demurrer, upon a hearing, was overruled. Appellants then answered denying the allegations of the cross-bill, and the cause was referred to the master in chancery to take the evidence and report his conclusions of law and fact. The master made his report finding that appellee Louis Richard was the only heir-at-law of Sibila Barbara Rupprecht, and that he was the owner in fee simple of the real estate described in the bill. Upon a hearing before the court the report of the master was confirmed and a decree entered accordingly. From this decree an appeal has been prosecuted to this court.

H. S. EARLEY, and H. T. SMITH, (WILLIAM VOCKE, and WILLIAM MANNHARDT, of counsel,) for appellants:

The rule in *Shelly's case* has no application to the case at bar. *Baker* v. *Scott,* 62 Ill. 86; *Ryan* v. *Allen,* 120 id. 648; 2 Washburn on Real Prop. 268; *Pierson* v. *Lane,* 60 Iowa, 60.

The gift of a fee will yield to the intention of the testator as expressed in subsequent clauses, from which it appears that a fee was not intended to be given, even where words of inheritance are used. 1 Jarman on Wills, 472; *Sherratt* v. *Bentley,* 2 Myl. & K. 149; *Friedman* v. *Steiner,* 107 Ill. 125; *Orr* v. *Yates,* 209 id. 222.

The will, construed as a whole and in all its provisions, shows that the testator did not intend to give a fee to his widow, and that the words of inheritance were inadvertently used. And in determining the intention of the testator, the fact that the will is inartificially drawn, and that the testator uses the word "heirs" in other than a technical sense in other parts of the will, must be taken into consideration. *Sherratt* v. *Bentley,* 2 Myl. & K. 149; 30 Am. & Eng. Ency. of Law, 671.

The word "heirs" may be read as "child" or "children" when it appears that such was the sense in which it was used; and this reasoning applies to any other class meant

by testator as legatees or devisees. 15 Am. & Eng. Ency. of Law, (2d ed.) 324, 331, note 3; *Butler* v. *Huestis,* 68 Ill. 603; *Belslay* v. *Engel,* 107 id. 182; *Bland* v. *Bland,* 103 id. 11; *Summers* v. *Smith,* 127 id. 645; *Ebey* v. *Adams,* 135 id. 80; *Griswold* v. *Hicks,* 132 id. 494; *Strain* v. *Sweeny,* 163 id. 603; *Smith* v. *Kimbell,* 153 id. 374.

C. I. McNETT, and J. N. FINNEGAN, for appellees:

In the devise to Sibila Barbara Rupprecht, "to hold and to have to her, my said wife, and to her heirs and assigns forever," the rule in *Shelly's case* applies, and subsequent parts of the will cannot be invoked in explanation of the testator's meaning. *Wolfer* v. *Hemmer,* 144 Ill. 554; *Walker* v. *Pritchard,* 121 id. 221; *Baker* v. *Scott,* 62 id. 86; *Brislain* v. *Wilson,* 63 id. 174; *Wicker* v. *Ray,* 118 id. 472; *Hageman* v. *Hageman,* 129 id. 164; *Vangieson* v. *Henderson,* 150 id. 119; *Lambe* v. *Drayton,* 182 id. 111; *Silva* v. *Hopkinson,* 158 id. 386; *Deemer* v. *Kessinger,* 206 id. 57; *Ewing* v. *Ewing,* 156 id. 61; *Fowler* v. *Black,* 136 id. 363; *Gruenewald* v. *Neu,* 215 id. 132.

Where words of inheritance are used in a will the law conclusively presumes the intention of the testator, and extrinsic proof is not admissible as to the meaning of testator's words. *Deemer* v. *Kessinger,* 206 Ill. 57; *Engelthaler* v. *Engelthaler,* 196 id. 230.

Where a fee is given by will and there is a subsequent inconsistent clause, such inconsistent clause is void for repugnancy. 4 Kent, 270; *Ide* v. *Ide,* 5 Mass. 500; *Jackson* v. *Bull,* 10 Johns. 19; *Jackson* v. *Robbins,* 16 id. 537.

The rule in *Shelly's case* is a rule of property.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question in this case is whether or not the widow of John Michael Rupprecht, Sibila Barbara Rupprecht, took under her husband's will an estate in fee simple, which upon her death would descend to the heirs-at-law, or

whether, by a proper construction of that will, she took a life estate, the remainder being vested in appellants. This question depends upon whether or not the rule in *Shelly's case* is applicable to the second clause of the will. It will be observed that the language of that clause is: "I give, devise, etc., to my beloved wife, Sibila Barbara Rupprecht, to hold and to have to her, my wife, and to her heirs and assigns forever." Under the repeated decisions of this court, unless it can be said that the words "her heirs and assigns forever" are to be given some limited or qualified meaning,—*i. e.,* that they are not used in their strict legal sense,—the rule applies and the fee simple title under it vested in the widow. In *Vangieson* v. *Henderson,* 150 Ill. 119, the will provided, "after the death of my wife, as aforesaid, I give, devise and bequeath unto my beloved daughter, Nora A. Vangieson, during her natural life, and after her death to descend and vest in her legal heirs, thirty-five acres," (describing the land,) and we held that the daughter took the title to the land in fee, the rule being, that whenever the ancestor takes an estate of freehold, and in the same gift or conveyance an estate is limited, either immediately or mediately, to his heirs, either in fee or in tail, the word "heirs" is one of limitation of the estate and not of purchase, and the ancestor takes the fee. The word "heirs," being used in the general legal sense, is, under the rule, one of limitation, and no intention of the testator, however clearly expressed, can change it into a word of purchase. (*Wolfer* v. *Hemmer,* 144 Ill. 554; *Silva* v. *Hopkinson,* 158 id. 386; *Deemer* v. *Kessinger,* 206 id. 57.) Many other cases will be found in our Reports to the same effect.

Counsel for appellants concede, as we understand them, that this is the law of Illinois, but they seek to distinguish the present case from those cases which have been heretofore decided, upon the ground that no intermediate estate is created by this will,—that is, that the second clause does not vest a freehold estate in the wife and the fee in her heirs, which is

necessary under the rule; in other words, they say there is here no intermediate estate. While this clause does not, in any express language, vest a life estate in the widow, such is the clear legal effect of it. In *Carpenter* v. *VanOlinder*, 127 Ill. 42, speaking of the application of the rule, we said, quoting with approval from Preston in his work on Estates (vol. 1, p. 281): "Neither the express declaration, first, that the ancestor shall have an estate for his life and no longer, * * * nor, thirdly, that the ancestor shall be tenant for his life and no longer, * * * will change the word 'heirs' into a word of purchase."

In *Hageman* v. *Hageman*, 129 Ill. 164, where the language of the will was, "I give and devise unto my sons, Frederick C. Hageman, George W. Hageman, Franklin J. Hageman and Louis B. Hageman, lots 10," etc., but they "shall neither of them sell or mortgage any of the lots above mentioned, but the same shall go to their heirs after them," it was said: "The question presented is whether, under this language of the will, the complainants, sons of the testator, took an estate for life in the lots devised or took the estate in fee," and we held that they took a fee simple estate, and again quoted from Preston on Estates, as follows: "In wills, the rule applies generally and without exception to the several limitations as often as the gift to the heirs is without any expression of qualification, and that neither the express declaration, first, that the ancestor shall have an estate for his life and no longer; nor, secondly, that he shall have only an estate for life in the premises, and that after his decease it shall go to the heirs of his body, and in default of such heirs vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator; nor, thirdly, that the ancestor shall be tenant for his life and no longer, and that it shall not be in his power to sell, dispose or make way with any part of the premises, * * * will change the word 'heirs' into a word of purchase." And we further said: "The rule in *Shelly's case* is a rule of property

in this State, (*Baker* v. *Scott,* 62 Ill. 86; *Ryan* v. *Allen,* 120 id. 648;) and its application to the particular case depends not upon the quantity of estate intended to be given to the ancestor, but upon the estate devised to the heir. When the devise is to heirs generally, the rule applies and is held to conclusively express the intention of the testator, and will necessarily govern and control in determining the estate devised, notwithstanding the expression of an intention on the part of the testator that the ancestor shall take a less estate than the fee. The devise, here, must therefore be treated as if it were to the sons of the testator and their heirs, without qualification, in which event it is clear the sons would take the fee in the estate devised.—See *Carpenter* v. *VanOlinder, supra.*"

In *Deemer* v. *Kessinger, supra,* among the latest expressions of this court on the application of the rule, we said that "manifestly, under the provision contained in the will, 'to my son William L. Deemer, and to his lawful heirs,' William took a freehold estate, and the estate was limited immediately to his lawful heirs in fee, which fulfilled every requirement of the rule and vested the fee simple title in William L. Deemer. By the terms of the codicil William L. Deemer is given the 'use, benefit and control' of the premises 'during his lifetime,' the effect of which was to vest an estate of freehold in him, and at his death the fee is given to his lawful heirs. In legal effect the devise to William L. Deemer contained in the codicil and that contained in the will are the same,—that is to say, a freehold estate by each of said provisions is given to William L. Deemer and an estate in fee is limited immediately to his lawful heirs, and the fee to the premises, under the codicil as well as under the will, vested in William L. Deemer." And so, if the position of counsel for appellants is tenable that the rule has application only where, by the express language of the testator, a freehold estate is created in the ancestor, many of our former decisions would have to be overruled.

Nor do we think there is any reasonable ground for saying that the word "heirs" is not used in the second clause of this will in its legal sense; and it is too well settled to be longer a matter of discussion in this State that where the rule applies, the subsequent expressed intention of the testator to the contrary can have no effect. Nor do we think there is any such inherent evidence of ignorance of the law in the draft of this will as to render it of uncertain or doubtful interpretation.

Our conclusion is that the circuit court properly held the rule in *Shelly's case* applicable to the second clause of this will.

Nor are we disposed to disturb the finding and decree of the court on the assignment of cross-errors as to the allowance of the solicitor's fee to counsel for appellants.

We think the decree of the circuit court is in conformity with the law and facts of the case, and it will accordingly be affirmed.

*Decree affirmed.*