[No. 23556. Department Two. May 2, 1932.]

*In the Matter of the Estate of* RUSSELL HARPER, *Deceased.*

HOPE HARPER, *Respondent,* v. LAURA DAGMAR HARPER, *Appellant.*[1]

[1] Reported in 10 P. (2d) 991.

*Peters, Evans & McLaren,* for appellant.
*John F. Dore,* for respondent.

MAIN, J.—The question in this case is whether Hope Harper, a daughter of Russell Harper, deceased, is entitled to share in his estate, notwithstanding the language used in his last will and testament.

Russell Harper and Josephine Schwartz were married in San Francisco, California, May 29, 1902, and Hope Harper was the issue of this marriage, born October 21, 1904. Some months prior to the birth of the child, Russell Harper abandoned his wife and never thereafter lived with her. Hope Harper never saw her father, except on one occasion, and that was when she was six or seven years of age. Hope Harper's mother died in 1908, and she was brought up by her maternal grandmother.

Russell Harper and Laura Dagmar Harper were married in the month of June, 1926. December 13, 1929, while in the state of California, Russell Harper made and executed his last will and testament, in paragraph three of which, after providing for the payment of his debts, funeral expenses, etc., he gave, devised and bequeathed to his wife, Laura Dagmar Harper, all the remainder of the property which he then owned or in which he might have any interest at the time of his death, and provided that, in the event that his wife should die before he did, the property should go, share and share alike, to a cousin named and to a niece of his wife.

Paragraph four of the will was as follows:

"In case any child or children shall hereafter be born to me, I bequeath to each such child the sum of five dollars, and in the event any person shall contest this will or attempt to establish that he or she is entitled to any portion of my estate or to any right as an heir to me, I hereby give and bequeath to such person the sum of five dollars."

Russell Harper, while a resident of Seattle, this state, died October 4, 1930, and his will was thereafter admitted to probate. He had no children other than Hope Harper. Both his parents, of whom he was the only child, preceded him in death. Hope Harper filed a petition in which she sought one-half of the estate, notwithstanding the will. The cause came on to be heard upon the petition and the answer thereto, and resulted in findings of fact from which the court concluded that Hope Harper was entitled to share in the estate. From the decree entered to the effect that she was entitled to one-half of the estate, and that, when the decree of distribution should be entered, she should be awarded one-half of the net proceeds thereof, Laura Dagmar Harper, individually and as executrix of the will of Russell Harper, deceased, appeals.

As above stated, the question is whether Hope Harper was entitled to share in her father's estate, notwithstanding paragraph four of the will, above set out. Rem. Comp. Stat., § 1402, provides that:

"If any person make his last will and die leaving a child or children or descendants of such child or children not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died

intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part.''

It will be observed that, under this section, Hope Harper was entitled to share in her father's estate as an heir, unless she was named or provided for in the will in such a way as to answer the requirements of the statute. The purpose of the statute was to provide against any child being disinherited through inadvertence of the testator when making his will, and, in order to satisfy the requirements of the statute, it is not necessary that a child or children be named specifically by each of their individual names or by terms or individual indication. It is sufficient to prevent a pretermission if the children of the testator are mentioned as a class, when coupled with words sufficient to show that the class was in the testator's mind.

In *Gehlen v. Gehlen*, 77 Wash. 17, 137 Pac. 312, the statute above mentioned was fully considered and the previous decisions of this court reviewed. The question in that case, as stated in the opinion, was this:

''Can the children of a testator be disinherited by naming them as a class, or must they be named specifically by each of their individual names, or by terms of individual identification?''

In the course of the opinion, it was said:

''The purpose of this and similar statutes is not to declare as a policy of law that a testator shall not disinherit any of his children, nor to compel him to make some provision, whether substantial or otherwise, for any of them. Its purpose was merely to provide against any child being disinherited through inadvertence of the testator when making his will. Any construction of the statute which would have the necessary effect of compelling such a provision for any possible child would seem to be unwarranted as broader than the purpose of the statute, and should not be adopted

unless the real purpose of the statute, namely, to prevent pretermission of any child, can only be accomplished by such a construction. . . . Since the purpose of the statute was merely to prevent pretermission, and not to compel a testamentary provision for any child, we are forced to the conclusion that the mention of the children of the testator as a class, when coupled with words sufficient to show that the class then in the testator's mind, included not only all children *in esse* but children thereafter to be born, is a sufficient naming of the children for the purpose of disinheritance within the meaning of the statute. . . .

"After all, in applying this statute, as in other connections, the intention of the testator, when made clearly apparent on the face of the will, must prevail. . . .

"It seems to us more consonant with the obvious purpose of the statute to hold that the naming of the children as a class, whether for the purpose of providing for them or for the purpose of disinheritance, when coupled with language conveying either intention, is such naming as to show that no child has been unintentionally overlooked, to avoid which contingency was the sole purpose of the statute. So far as any of our former decisions may be construed as holding the contrary, they are hereby overruled."

The cases of *Bower v. Bower,* 5 Wash. 225, 31 Pac. 598, *In re Barker's Estate,* 5 Wash. 390, 31 Pac. 976, *Hill v. Hill,* 7 Wash. 409, 35 Pac. 360, and *Purdy v. Davis,* 13 Wash. 164, 42 Pac. 520, are thoroughly considered and reviewed in the opinion in that case, with the result that, in so far as they were out of harmony therewith, they were expressly overruled.

The question that is here presented was not involved in the case of *In re Hebb's Estate,* 134 Wash. 424, 235 Pac. 974, and was not discussed therein. The question there was whether an adopted child was a "descendant" of his adoptive parents, within the contempla-

tion of the statute above quoted. As a preliminary to the consideration of this question, the statute was quoted in the opinion, and the pertinent parts paraphrased. There was there no comment upon what was a sufficient designation of a child or children in order to meet the requirements of the statute.

The state of Missouri has a statute which in all material respects is the same as that of this state. In *McCourtney v. Mathes,* 47 Mo. 533, the supreme court of that state had before it a will which provided:

"I give and bequeath to my beloved wife, Bridget, the sole and entire possession and disposal and management of all my real and personal estate, also the sole and entire management and education of my children; and that she shall have the management, distribution and disposal of everything as completely, according to law, as I myself now have, during her widowhood. But in case she should change her mind and marry, my will is that the estate in her possession at the time shall be disposed of according to law among my surviving heirs."

The question there, as here, was whether the terms of the will were sufficient to work a disinheritance of the children under the statute. In disposing of this question, it was said:

"It is plain that she must have been in his mind. There are two allusions by the testator to his children: one in giving to his widow their management and education, and one in giving a remainder to his heirs, contingent upon her marriage. They were all remembered or were all forgotten; and while he remembered them collectively, can it be said that he had forgotten them all individually? The object of the statute was to guard the testator against the effect of a mistake in providing for some of his children to the exclusion of others, through forgetfulness of their existence, or in otherwise disposing of his property in such forgetfulness, and the failure to allude to them is made evidence that they were so forgotten. In speaking of his

children or heirs, had the testator named some of them, with no allusion to the plaintiff, we might then assume that she was forgotten; but where all are remembered collectively and equally provided for, with nothing to indicate that one was more in his memory than another, we must assume that each one was remembered and provided for.''

That excerpt was by this court quoted with approval in *Gehlen v. Gehlen,* 77 Wash. 17, 137 Pac. 312, *supra.*

The supreme court of Missouri also holds that,

''Whenever the mention of one person, by a natural association of ideas, suggests another, it may reasonably be inferred that the latter was in the mind of the testator and was not forgotten or unintentionally omitted.'' *Hockensmith v. Slusher,* 26 Mo. 237; *Fugate v. Allen,* 119 Mo. App. 183, 95 S. W. 980.

In the present case, it is not necessary for us to adopt a rule as broad as the one just stated. We neither approve nor disapprove of it, but state it solely for the purpose of showing the construction that the supreme court of Missouri has placed upon the statute.

In California, there is a statute which is not so nearly like the statute of this state as is the statute of the state of Missouri, but is, in substance, the same. The supreme court of California has repeatedly held that reference in a will to heirs included children, and was sufficient to satisfy the requirements of the statute and work their disinheritance.

In the case of *In re Hassell's Estate,* 168 Cal. 287, 142 Pac. 838, the will before the court contained this:

''Those of my heirs not herein mentioned has been omitted by me with full knowledge thereof.''

In the course of the opinion, it was there said:

''The first quotation from this will indicates the knowledge of the testator of the existence of one son, who is made the recipient of the father's bounty. It is argued by appellants that the language subsequently

quoted to the effect that 'heirs not herein mentioned have been omitted with full knowledge' should not be construed to mean and to include his children, since if he had designed or intended to exclude his children he would have used the precise word. But this is asking the court to put an unpermissible construction upon a word of well-defined meaning both at law and in popular parlance. At law, while the word may include others, it always includes the children of a decedent. In popular parlance it not only has the same meaning, but, if there be any difference, it is more frequently used as a synonym of children. Thus, in common speech, a man will frequently speak of his heirs, meaning thereby his children and his children alone. No natural sympathy for the disinherited (the reason for which disinhersion we cannot know) can be allowed so grossly to pervert the meaning of a well-understood word as to permit us to hold, as here under appellant's contention we would be obliged to hold, that the word 'heirs' did not include and was not used to include a class universally embraced within its significance.''

The cases of *In re Lindsay's Estate,* 176 Cal. 238, 168 Pac. 113, and *In re Kurtz's Estate,* 190 Cal. 146, 210 Pac. 959, and other cases decided by the supreme court of California, are to the same effect.

In *Verrinder v. Winter,* 98 Wis. 287, 73 N. W. 1007, by the supreme court of Wisconsin, it was said:

''We think there is no reasonable doubt but that the words 'her heir,' in the will, referred to the unborn child, as certainly as though the words 'her unborn child' had been used, instead of 'her heir'.''

Much reliance is placed upon the case of *Wadsworth v. Brigham,* 125 Ore. 428, 259 Pac. 299, 266 Pac. 875, decided by the supreme court of Oregon, as supporting the judgment in the case now before us. Oregon has a statute in all material respects the same as that of this state, above quoted. In the case referred to, it is distinctly stated that the use of the word ''heirs'' is not sufficient to work a disinheritance of a child under

the statute. In the opinion in that case, the earlier decisions from this court are referred to with apparent approval, but no mention is made of the later case of *Gehlen v. Gehlen, supra,* wherein those cases were reviewed by this court, and, in so far as out of harmony with that case, overruled.

The holding of the supreme court of Oregon is not in accordance with the rule of this court adopted in the case of *Gehlen v. Gehlen, supra,* and is out of harmony with the rule of the supreme courts of Missouri and California. The rule of the case of *Gehlen v. Gehlen,* as already pointed out, is that, if the children of the testator are mentioned as a class and they are necessarily included within that class, it follows that they were sufficiently referred to to satisfy the requirements of the statute and to show that they were not unintentionally overlooked.

The word "heirs," used in the will of Russell Harper, deceased, was broad enough to include his daughter, Hope Harper, and showed, when the language of the will is read in connection with the surrounding facts and circumstances, that her father, at the time he executed the will, must have had her in mind.

In determining the meaning to be given to the words used in a will, extrinsic evidence of the surrounding facts and circumstances may be considered, not for the purpose of proving intention as an independent fact, but as an aid to a right understanding of the language that has been used. Greenleaf on Evidence (15th ed.), p. 388; 28 R. C. L. 270; *In re Tiemens' Estate,* 152 Wash. 82, 277 Pac. 385, 68 A. L. R. 753.

As already stated, by the use of the word "heirs" in paragraph four of the will of Russell Harper, deceased, Hope Harper was necessarily included, and the intention not to make provision for her is suffi-

ciently manifest to indicate that she had not been unintentionally overlooked.

The decree appealed from will be reversed, and the cause remanded with directions to the superior court to dismiss the petition of Hope Harper.

TOLMAN, C. J., HOLCOMB, and BEALS, JJ., concur.

MILLARD, J. (dissenting)—I would content myself with simply recording my dissent, if it were not for the fact that I consider the majority opinion contrary to the weight of authority and opposed to the clearly expressed will of the legislature.

The respondent, daughter of Russell Harper and his first wife, was born October 21, 1904. Respondent's mother, Harper's first wife, died in 1908. Harper married the appellant in 1926. He executed his last will and testament December 13, 1929, and died October 4, 1930. No children were born of the second marriage. In his will, the testator did not specifically name his only child, whose mother he deserted a few months prior to the child's birth. No provision was made in the will for the only child of the testator. There is no mention of her in the will either by name or by class. As to that child, Russell Harper died intestate.

The only reference to "child or children" is in paragraph four of the will, which is quoted in the majority opinion. "In case any child, or children, shall hereafter be born to me, I bequeath to each such child $5.00," does not include children then in being. That was not a naming of or a providing for the child in being (the daughter was then twenty-five years old and apparently forgotten by her father), as required by the statute. There was no mention of child or children of the testator as a class, except children thereafter born. There were no words sufficient to manifest the

decedent's intention to disinherit his only child who was then in being.

The statute reads as follows:

"If any person make his last will and die leaving a child or children or descendants of such child or children not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be deemed to die intestate . . ." Rem. Comp. Stat., § 1402.

The weight of authority is to the effect, and we at an early date adopted the rule (*In re Barker's Estate,* 5 Wash. 390, 31 Pac. 976) from which we have not departed, that a will leaving all the property of the testator or testatrix to the surviving spouse, to the exclusion of every one else who might be entitled to it, was insufficient to show an intention to exclude the children of the testator or testatrix. To the same effect is *Purdy v. Davis,* 13 Wash. 164, 42 Pac. 520.

"Whether a gift of all of testator's property to some one other than his children, usually to the surviving spouse, is sufficient to show an intention to exclude testator's children is a question upon which there is a conflict of authority. The weight of authority is to the effect that such devise does not show an intention to omit testator's children; but some courts hold that such a devise shows an intention to omit testator's children; as it can not take effect unless such children are excluded. As the statute is intended to protect the interests of the omitted children unless it appears clearly that testator had in mind the existence of such children when he made his will, the minority view would seem to be in violation of the meaning of the statute, and, quite possibly, of its express terms." Page on Wills (2nd ed.), § 492, p. 804.

I am of the view that *Gehlen v. Gehlen,* 77 Wash. 17, 137 Pac. 312, lends no support to the majority opinion, and that other cases cited by the majority are not

applicable. *Gehlen v. Gehlen, supra,* is distinguishable on the facts from the case at bar. We there held that a testator could, by naming them as a class, disinherit his children; that the statute did not require that the children be named specifically by each of their individual names or by terms of individual identification. In the will involved in the *Gehlen* case, the children were named as a class. That will, so far as pertinent, reads as follows:

"I make no provision for my children after my death, or any child which may hereafter be born, knowing that my said wife, who is their mother, will deal justly by them."

There the children were clearly designated as a class. We did not there hold, nor have we ever held, that a testator could disinherit his children by reciting in his will that he made no provision for any one other than a person named, knowing that such person would deal justly by every one, or that any one contesting the will or attempting to establish that he or she was entitled to any part of the estate or to any right as an heir to the testator, would be given a nominal sum or disinherited. To so hold would be to set aside the statute providing that, if a person in his or her last will fail to name or provide in such will for his or her children, "such testator, as to such child or children not named or provided for, shall be deemed to die intestate."

Instead of lending support to the majority opinion, *Gehlen v. Gehlen, supra,* sustains the position of respondent. In that case, we said, in reviewing the case of *Purdy v. Davis,* 13 Wash. 164, 42 Pac. 520:

"An examination of the decision in *Purdy v. Davis,* also, shows that the language quoted was unnecessarily broad as applied to the language of the will there under consideration. In that case, the testatrix de-

vised and bequeathed all of her property to her husband, subject to the following proviso:

" 'If the said Percival A. Purdy (appellant) should marry again after my demise all my property, both real and personal, is to belong to any one or more children that *may be* born to me before my demise.'

"It is manifest that this proviso makes no mention of children by name, nor of children as a class, but the class mentioned was *only future-born children, which would not include the child already born, who,* as there held, *was not disinherited by the language used.* That holding was, in any view of the statute, clearly correct, since *that child was not mentioned either by name or by inclusion in any class.*" (Italics ours.)

So, too, in the case at bar, the child was not mentioned either by name or by inclusion in any class.

In view of the provision of the statute (Rem. Comp. Stat., § 1402), a mere general reference that,

"In the event any person shall contest this will or attempt to establish that he or she is entitled to any portion of my estate or to any right as an heir,"

is not a sufficient compliance with the statute to prevent a testator from dying intestate "as to such child or children not named or provided for."

ON REHEARING.

[<em>En Banc.</em> October 13, 1932.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein. Reversed and remanded, as therein directed.

MILLARD, J. (dissenting)—I dissent. I am of the view that the majority opinion is contrary to the spirit of the statute (Rem. Comp. Stat., § 1402) and defeats the clearly expressed intent of the legislature that a

parent may not disinherit his child or children unless such child or children are "named or provided for" in the last will and testament of the parent.

HERMAN, J., concurs with MILLARD, J.

